UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

JORDAN P.[1],                           )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )        CIVIL NO.  2:19cv341
                                        )
ANDREW SAUL,                            )
Commissioner of Social Security,        )
                                        )
        Defendant.                      )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Supplemental

Security Income (SSI), as provided for in the Social Security Act. 42 U.S.C. § 423(a), §

1382c(a)(3).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the

[Commissioner] shall file a certified copy of the transcript of the record including the evidence

upon which the findings and decision complained of are based.  The court shall have the power

to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the [Commissioner], with or without remanding the case for a

rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by

substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less

than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

_____

[1]  To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

     1.     The claimant meets the insured status requirements of the Social Security Act

through September 30, 2003.

2.    The claimant has not engaged in substantial gainful activity since February 5, 2015, the alleged onset date (20 CFR 416.920(b) and 416.981 *et seq*.).

3.    The claimant has the following severe impairments: residuals from multiple hernia operations, nerve damage to the right leg, peripheral neuropathy and neuralgia, obesity, headaches, generalized anxiety disorder, and episodic alcohol abuse.  (20 CFR 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with exceptions.  Specifically, the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday.  She [sic] is never to climb ladders, ropes or scaffolds, but is occasionally able to climb ramps and stairs, and balance, stoop, kneel, crouch and crawl.  Mentally, the claimant is limited to simple, routine and repetitive tasks and have no public interaction.

6.    The claimant does not have any past relevant work. (20 CFR 416.965).

7.    The claimant was born on September 2, 1983 and was 37 years old, which is defined as a younger individual age 18-49, on the amended onset/application date (20 CFR 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from February 5, 2015, through the date of this decision (20 CFR 416.920(g)).

(Tr.  22 - 31).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

Plaintiff filed his opening brief on March 29, 2020.  On May 11, 2020, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on May 26, 2020. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff has a history of significant treatment for hernia repair surgeries prior to the relevant period. (R. 443, 451, 455, 457, 460, 464). He underwent multiple surgeries including an inguinal hernia repair (R. 641), right groin exploration and removal of prior hernia mesh (R. 655, 663), a bilateral superior hypogastric plexus block with c-arm (R. 714), injections with lidocaine and Marcaine to the ilioinguinal nerve area (*See e.g.*, R. 689-91, 720-23) and an exploration of the right inguinal area and peripheral neurectomy. (R. 743). Thereafter he continued to treat for inguinal neuropathy (R. 466, 470, 476, 478-79, 482, 485, 488, 498, 501, 504, 507, 511, 542, 576, 579, 583) and anxiety (R. 399, 494, 498,501, 504, 507, 511, 516, 519, 522, 526, 530, 534, 542, 546, 549, 552, 555, 559) along with abdominal pain (R. 466, 519, 522, 526, 530, 534, 538, 546, 549, 552, 555, 559, 563) for which he was medicated with Methadone and Alprazolam. *Id*. Plaintiff also has a history of headaches for which he received treatment. (R. 397, 604, 608, 698).

Close to his application date, Plaintiff underwent a psychological consultative examination ("CE") by Raymond R. Bucur, Ph.D. who noted his father had driven him to the appointment Plaintiff reported he was excessively anxious and had periodic panic episodes. The impression was mild generalized anxiety disorder. (R. 615-20). At the internal CE by Dr. R. Jao, the impression was multiple hernia repairs.

In 2007, Plaintiff had his right testicle removed and suffered chronic pain in the groin area, severe nerve damage due to multiple surgeries and anxiety with panic attacks. (R. 625). His dad drove him to the CE. Plaintiff reported severe pain in right hip radiating down the entire right leg, difficulty standing and walking for any length of time and he was limited with respect to bending and stooping due to pain. Plaintiff had previously undergone multiple pain injections which did not help, felt fatigued all the time, was suffering panic attacks due to severe pain and

could have no more treatment due to insurance issues. (R. 622).

In 2015, Plaintiff treated with Dr. William Pierce for abdominal pain, anxiety, neuralgia, pain to the left great toe, vomiting, sinusitis and inguinal nerve neuropathy. (R. 801-18). An antidepressant, Zoloft, was added. (R. 815). In May, Dr. Pierce wrote that Plaintiff was disabled due to inguinal nerve neuropathy and could not perform substantial gainful activity. (R. 628). Plaintiff continued to treat with Dr. Pierce for neuropathy, hypogonadism, abdominal pain and migraines with Topamax added. (R. 787-99). When walking, he was favoring his right side. (R. 799-800).

At a November 2015 CE, it was noted Plaintiff's dad drove him. He had a history of severe nerve damage to the right groin area, chronic pain and anxiety. (R. 629-31). Plaintiff continued to treat with Dr. Pierce for abdominal pain, right lower quadrant, anxiety state, neuralgia of inguinal region, pain of the left great toe, vomiting and chronic maxillary sinusitis. (R. 783-84).

In December 2015, Plaintiff underwent a CE by psychologist, Caryn Brown. His dad took him to the CE. The impression was adjustment disorder with depressed mood and anxiety disorder with features of panic attack. He reported he had poor sleep and was never without pain. (R. 634-37).

Plaintiff continued to treat with Dr. Pierce. (R. 780-81). In February 2016, Dr. Perce wrote that Plaintiff could not work due to severe abdominal pain, needed to take narcotics and Xanax, had chronic weakness and could not stand for 30 minutes. (R. 639). He received a depotesterone cypionate injection. (R. 779). In March, Dr. Mark R. Van Buskirk DDS, wrote that Plaintiff exhibited a pronounced gag reflex and daily episodes of emesis. During the appointments he

routinely would gag/choke multiple times and had frequent emesis episodes that had impacted his teeth. (R. 640).

Plaintiff continued to treat monthly with Dr. Pierce. (R. 767-75, 819-23, 847-69). Dr. Pierce completed a RFC in 2017 explaining that he had treated Plaintiff once per month for 10 years for inguinal neuropathy and anxiety. Plaintiff could not lift 5 pounds due to hernia and nerve damage, could not walk a block without severe pain or needing rest, could not walk a block on uneven or rough ground, could not climb steps without use of a handrail, needed to lie down 3 hours at one time and about 6 hours total. He needed unscheduled breaks, could sit 6 hours and stand 6 hours per day, needed to elevate his legs above heart level, could not climb ladders, ropes or stairs, would constantly be off task due to pain and stress, and miss more than 5 days of work per month. (R. 762-65).

In 2018, Dr. Pierce completed a second RFC. In it he explained that Plaintiff had nerve damage so severe that right now medication was the only treatment and was not a great factor in helping his discomfort. Plaintiff could not do 90% of what he used to do and tests indicated his pain level was very high and testosterone was very low. Dr. Pierce found that Plaintiff was in extreme pain, off task over 30% of the day, would miss more than 5 days of work, would constantly have pain interfering with attention and concentration, frequently have stress that would interfere with attention and concentration, could not do even sedentary work, needed to lie down throughout the day, could not walk a block without rest or in severe pain or walk a block on rough or uneven ground or climb steps without use of a handrail. (R. 873-76).

In April 2018, Plaintiff underwent another CE by Dr. J. Smejkal. His dad drove him to the appointment. Upon examination, Plaintiff had a slight limping gait. He could not stoop and squat

7

completely, could not walk heel to toe and tandem and the CE found Plaintiff was unable to do work activities such as prolonged sit, stand or walk due to pain and stiffness to the right leg. He also had difficulty lifting, carrying and handling large objects due to abdominal pain and tenderness. (R. 878-81). In a source statement, Dr. Smejkal found that Plaintiff could sit 4 hours per day, stand/walk 2 hours per day, never push/pull, frequently use the upper extremities, never stoop, kneel, crouch or crawl, climb scaffold, ladders, be exposed to vibration or operate a motor vehicle. He could occasionally handle humidity, wetness and extreme cold, could not drive due to right leg pain and nerve damage and could not travel without companion for assistance. (R. 882-87).

In support of remand, Plaintiff first argues that the ALJ erred in weighing the opinion evidence.  The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *Kaminski v. Berryhill*, 894 F.3d 870, 874, 874 n.1 (7th Cir. 2018) (for claims filed before March 27, 2017, an ALJ "should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record."). An ALJ must "offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010)(internal quotation marks and citations omitted); *see also Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018). Those reasons must be "supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider

the length, nature, and extent of the treatment relationship, frequency of examination, the

physician's specialty, the types of tests performed, and the consistency and supportability of the

physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)(citation omitted); *see* 20

C.F.R. § 416.927(c).

Plaintiff argues that, in the present case, the ALJ afforded little weight to the opinions of

Dr. Pierce, Plaintiff's long-time physician of over 10 years. 20 §C.F.R. 416.927(c)(2)(ii).

Plaintiff argues that the ALJ did not make the findings required to determine whether Dr. Pierce's

opinion was entitled to controlling weight. Further, the ALJ did not determine whether the

opinion was "well-supported" or whether it was "not inconsistent with the other substantial

evidence." Rather, the ALJ simply "[gave] little weight to the doctor's opinion" without setting

forth a legal standard, weighing all the facts, or explaining how she arrived at her conclusion (Tr.

28); *Rosalyn L. v. Saul*, 3:19CV345, 2020 WL 614648, at *7–8 (N.D. Ind. Feb. 10, 2020). As

held in *Rosalyn L.*:

> That the ALJ said the opinion was entitled to "little weight" does not answer the
> "controlling weight" question; they are different tests. Presumably, the Regulations
> would not have placed the controlling weight test first in the regulatory analysis if
> it could be circumvented by simply giving a treating source opinion "little weight."
> 20 C.F.R. § 404.1527. Well-settled principles of statutory construction instruct that
> laws should be read so that "if it can be prevented, no clause, sentence, or word
> shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19,
> 31(2001). If "little weight" is enough, the controlling weight test is superfluous.
> Similarly, the "controlling weight" test is specific to treating source opinions while
> the multi-factor weighing test is applicable to all opinions. 20 C.F.R. § 404.1527.
> The "well-supported" and "not inconsistent with the other substantial evidence"
> standard reflect the enhanced value the agency places on the treating source's
> opinion as compared with the opinions of doctors who had less connection to the
> claimant. Again, principals of statutory construction are helpful; typically,
> statutory provisions with broader and more general applicability are not permitted
> to subsume provisions with more specific terms and applicability. *See,*
> *e.g., McDonnell v. Cisneros*, 84 F.3d 256, 261 (7th Cir. 1996) (discussing
> presumption that exclusive remedies and limitations in statute should not "be

circumvented by extending a more generally worded statute over the subject of the more specific one.").

*Id*. Thus, Plaintiff maintains that the ALJ's first error was in failing to consider whether to afford the opinion the controlling weight to which it may have been entitled.

The ALJ opined that Dr. Pierce's opinions were entitled to little weight as they were "entirely inconsistent" with the doctor's monthly examinations. (R. 28); *See Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014). However, Dr. Pierce's records continue to document abdominal pain, right inguinal nerve region pain or pain on examination to the right lower quadrant (R. 768-69, 772, 774, 778, 780-81, 783-84, 786-87, 793, 799, 805, 807-08, 813, 832, 859, 863), vomiting (R. 790, 856) and Plaintiff was limping at times and  positive for back pain. (R. 798, 801). Plaintiff contends that this is evidence not of "occasional" tenderness but of regular pain for which he sought treatment on a monthly basis.

The ALJ opined that the two opinions of Dr. Pierce are inconsistent with one another. (R. 28). "Physicians may update their views without being inconsistent if their later opinions are based on a patient's changed condition". *Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018) citing *Scrogham v. Colvin*, 765 F.3d 685, 696–97 (7th Cir. 2014). Here, in the second opinion, Dr. Pierce explained that the nerve damage was so severe that medication was the only treatment and was not a great factor in alleviating his discomfort. Test levels indicated his pain levels were extremely high and testosterone levels were extremely low. (R. 876). Plaintiff notes that in the 2017 RFC, while Dr. Pierce found Plaintiff could sit, stand and walk for 6 hours per day, this is inconsistent with light work as the doctor likewise found that he needed to lie down for 6 hours per day, 3 hours at a time, (R. 763) Plaintiff would constantly be off task and have work absences in excess of five days per month. (R. 764). Plaintiff concludes that this is contrary

to the ALJ's statement of consistency with light work. (R. 28). "An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider "all relevant evidence." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

The ALJ found that since Plaintiff's onset date, Dr. Pierce failed to order a more aggressive protocol and there was no evidence of any emergency room visits, hospitalizations, surgeries, injections and physical therapy. (R. 28). However, prior to Plaintiff's onset date he underwent four surgeries and was then diagnosed with inguinal neuropathy. Also, treatment of the ilioinguinal neuralgia includes conservative measures such as oral analgesics, anticonvulsants, rehabilitation as electroanalgesic currents, and myofascial release. If conservative measures do not control symptoms, ultrasound-guided block, hydro-dissection, or radio-frequency ablation of the nerve can provide satisfactory relief of symptoms. As the record reflects, Plaintiff lost his insurance and could no longer undergo the latter procedures or see a specialist. (R. 28, 49-50,63, 622); SSR 16-3p. Further, Plaintiff testified that he had undergone a total of 72 nerve blocks and the anesthesiologist who gave them said that due to the scar tissue, he would not perform any more. (R. 56). Plaintiff had tried physical therapy which caused increased pain.(R. 56).

Plaintiff notes that the ALJ apparently assumed that Plaintiff's symptoms were not disabling because they never resulted in a trip to the emergency room. Not only does this conclusion ignore Plaintiff's financial barriers to treatment as detailed above, but it is also premised on the ALJ's own independent medical determination—not that of an expert—that Plaintiff must seek emergency treatment in order for his symptoms to be disabling. *See Fields v. Colvin*, 213 F. Supp. 3d 1067, 1072 (N.D. Ind. 2016)(remanding where ALJ assumed claimant's headaches were not disabling because they never required hospitalization); *Schomas v. Colvin*,

11

732 F.3d 702, 709 (7th Cir. 2013)("we do not understand the Commissioner's point; a person suffering continuous pain might seek unscheduled treatment if that pain unpredictably spikes to a level which is intolerable, but otherwise why would an emergency-room visit be sensible? Unless emergency treatment can be expected to result in relief, unscheduled treatment in fact makes no sense.").

Plaintiff also objects to the ALJ's conclusion that Plaintiff should have pursued more aggressive post-surgery treatment for his abdomen if his symptoms continued to limit him. Plaintiff argues that the ALJ assumed, based on her lay opinion, that Plaintiff would have benefitted from such treatment; but this overlooks Dr. Pierce's RFC stating that the nerve damage was so severe that at the time, medication was the only treatment. (R. 876). Without citing to another medical source that contradicts Dr. Pierce's opinion or otherwise explains how any additional treatment would have alleviated Plaintiff's symptoms, Plaintiff argues that the ALJ failed to provide a logical bridge from the evidence to her conclusions. *Keiper v. Berryhill*, 383 F. Supp. 3d 819, 824 (N.D. Ind. 2019) citing *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

Plaintiff further argues that while the regulations require ALJs to consider the nature and extent of the treatment relationship, *see* 20 C.F.R. § 416.927(c)(2), they must resist the temptation to offer their own opinions on what sort of treatment would be appropriate. *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *see also Fischer v. Saul*, 19-C-291, 2020 WL 1479306, at *11 (E.D. Wis. Mar. 26, 2020). Plaintiff concludes that the ALJ improperly substituted her own, nonprofessional opinion for that of Plaintiff's treating physician. *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("[A]n ALJ cannot play the role of doctor and interpret medical evidence.").

12

The ALJ noted that Plaintiff admitted to looking for work, which is contrary to Dr. Pierce's RFC. (R. 28). Plaintiff argues that the ALJ misstated the attempt to work. (R. 28). Plaintiff testified to trying to work but was forced out because he could not sit and stand in the allotted time asked, could not perform all the work, could not drive from Crown Point to Chicago without taking medication and could not sit that long. (R. 59). Plaintiff notes that "the Seventh Circuit has previously recognized that a 'claimant's desire to work is not inconsistent with [his] inability to work because of a disability.' " *Rucker v. Berryhill*, No. 17 C 5420, 2018 WL 4110740, at *4 (N.D. Ill. Aug. 29, 2018) (quoting *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015)). A claimant that insists on looking for employment despite claiming to suffer from a disability might simply indicate "a strong work ethic or overly-optimistic outlook rather than an exaggerated condition." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016); *see also Rein v. Berryhill*, No. 16 C 10410, 2018 WL 1915489, at *3 (N.D. Ill. Apr. 23, 2018) (citations omitted); *Prilaman v. Berryhill*, 1:17-CV- 00513-SLC, 2019 WL 126197, at *7 (N.D. Ind. Jan. 8, 2019).

Plaintiff points out that the ALJ affords little weight to the opinions of Dr. Pierce except for the finding that Plaintiff can sit, stand or walk 6 hours per day, as noted above regarding light work. (R. 29). Yet, the ALJ points to no contrary evidence or medical statement contradicting Dr. Pierce's assessments. (R. 29). Instead, Dr. J. Mejkal, the CE, found Plaintiff incapable of employment (R. 29, 878-87) and the ALJ rightfully found the DDS State agency entitled to little weight as they failed to consider the treatment records from Dr. Pierce as well as the CE's report and determination. (R. 30). Plaintiff argues that the ALJ appears to have supplanted the opinions of all doctors and filled the evidentiary gap on her own. *See, e.g., Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("When an ALJ denies benefits, she must build an 'accurate and logical

13

bridge from the evidence to her conclusion,' and she is not allowed to "play doctor" by using her own lay opinions to fill evidentiary gaps in the record."); *Noak v. Saul*, 2:18-CV-288-JEM, 2020 WL 1164432, at *5 (N.D. Ind. Mar. 11, 2020).

The ALJ also afforded CE, J. Smejkal, little weight, finding that it appeared to be based on subjective complaints and was entirely inconsistent with Plaintiff's normal physical examinations and prior CEs. (R. 29). As held in *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008), "if the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it". *Id*. Here, the CE noted that there was tenderness to the abdomen (R. 879), on exam there was severe pain and stiffness in the entire right leg (R. 880), Plaintiff had abnormal sensation to light touch and pin prick in the right foot (R. 880), he was not able to stoop and squat completely, had a slight limping gait, was not able to walk heel to toe and tandem and was able to stand from a seated position with difficulty (R. 880). Plaintiff contends that it is clear that this is not a case where conclusions were rendered purely based on a claimant's subjective complaints. (R. 29, 879-80). The findings were largely consistent with that of Dr. Pierce, (R. 29), and Dr. Pierce's records continued to document abdominal pain, right inguinal nerve region pain or pain on examination to the right lower quadrant (R. 768-69, 772, 774, 778, 780-81, 783-84, 786-87, 793, 799, 805, 807-08, 813, 832, 859, 863), vomiting (R. 790, 856) and he was limping at times and positive for back pain. (R. 798, 801).

Plaintiff also notes that the earlier CEs did not translate findings into functional terms, (R. 29, 625, 631), and thus it is unclear how the ALJ alleges that they were inconsistent. (R. 29). The earlier CE, prior to Plaintiff's SSI application date, reflected that he could stoop and squat with

difficulty, walk heel to toe and tandem with difficulty, he had pain in the right hip (R. 624) and

the impression was history of "severe" nerve damage due to multiple surgeries. (R. 625). In the

second CE, Plaintiff had abnormal gait, could not squat, had difficulty with stooping and he had

difficulty walking heel to toe and tandem. (R. 631). Again, the impression was history of severe

nerve damage with chronic pain. (R. 631). Plaintiff contends that it is unclear how these two

examinations were normal or outweighed the opinion of CE Smejkal who offered functional

terms to the conclusions. Thus, Plaintiff argues the ALJ has not provided good reasons for the

rejection of the CE opinion that he is disabled. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir.

2014)(rejecting or discounting the opinion of the agency's own examining physician that the

claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice

and await a good explanation for this unusual step); *Loftis v. Berryhill*, 15 C 10453, 2017 WL

2311214, at *7 (N.D. Ill. May 26, 2017).

    The record shows that the ALJ rejected the DDS medical consultants. (R. 30). Once the

ALJ rejected the state agency doctors' opinions, "the ALJ was left with an evidentiary deficit"

and was "required to seek evidence to fill that void, such as an updated state agency reviewing

doctor opinion to consider the new, additional evidence." (R. 30); *see, e.g., Campbell v. Astrue*,

627 F.3d 299, 309 (7th Cir. 2010). In the present case, as noted above, additional evidence that

was not reviewed included all of Dr. Pierce's records as well as those by the CE, J. Smejkal.

    "When an ALJ denies benefits, [s]he must build an 'accurate and logical bridge from the

evidence to her conclusion,' and [s]he may not 'play doctor' by using [her] own lay opinions to

fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012)

(citations omitted). "It is an ALJ's responsibility to recognize the need for further medical

evaluations of a claimant's conditions before making RFC and disability determinations." *Id*. at 557 (citations omitted); *see also Suide*, 371 F. App'x at 690; Hearings, Appeals, & Litigation Manual (HALLEX) I-2-5-34, 1994 WL 637370, at *1 (Apr. 1, 2016). An ALJ may not "fabricate a mental RFC out of whole cloth." *Vian v. Comm'r of Soc. Sec.*, No. 1:15-cv-00040-SLC, 2017 WL 461561, at *10 (N.D. Ind. Feb. 2, 2017) (citing *Betts v. Colvin*, No. 13-cv-6540, 2016 WL 1459414, at *3 (N.D. Ill. Apr. 19, 2016)).

In the case herein, a gap in the ALJ's assessment is how the objective evidence and subject testimony supports a finding of light work pursuant to 20 C.F.R. §416.967. Plaintiff contends that while the ALJ did minimally articulate her reasoning when assigning some portions of the RFC, the ALJ nevertheless fell short of building an "accurate and logical bridge from the evidence to her conclusion" as to other portions. *Chase*, 458 F. App'x at 557.

With respect to mental restrictions, Plaintiff notes that the ALJ made much of the fact that Plaintiff can drive. Yet, at every CE it is documented that he was driven to the appointment by his father. (R. 615-20, 622, 629-31, 878-81). At the last CE, it was noted he had severe leg problems and could not drive. (R. 887). Plaintiff explained that once a week he drove a quarter mile. (R. 68). As to concentration, Plaintiff explained that he had problems with his memory. (R. 62). His medication got him very discombobulated. (R. 61); 20 C.F.R. § 416.929(c) (3); SSR 16-3p (ALJ should consider medication side effects). Plaintiff claims that the ALJ simply ignores this line of evidence. (R. 30). Moreover, in Plaintiff's daily activities form he explained he had huge agoraphobia (R. 346), handled stress "terribly" (R. 346), would get anxiety attacks and vomit (R. 344) and rarely left the house due to extreme anxiety. (R. 343). This evidence is contrary to the ME who found Plaintiff could have a full range of interaction with supervisors and coworkers.

16

Moreover, even the DDS, review taking into consideration the functional report, had found Plaintiff's allegations "credible" and found he could only relate to others on a superficial and ongoing basis with coworkers and supervisors. (R. 154). Plaintiff claims that the ALJ erred in weighing the DDS evidence, suggesting, incorrectly, that Dr. Albert had found greater social restrictions when, in fact, the State agency found very restrictive social interactions with others. (R. 30); *Zurawski*, 245 F.3d at 887 (requiring a logical bridge); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)(Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored).

In response, with respect to Dr. Pierce's opinion, the Commissioner argues that functional limitations were "inconsistent with his own treatment notes". Yet, as Plaintiff points out, the Commissioner does not state what the inconsistency is; nor did the ALJ. (R. 28). As held in *Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016):

> [E]ven assuming that some of Dr. Shannon's opinions were not fully corroborated by his treatment records, the ALJ cited no evidence that contradicted the opinions. This distinction is an important one, since the mere absence of detailed treatment notes, without more, is "insufficient grounds for disbelieving the evidence of a qualified professional." *Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014); *accord Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

The Commissioner argues that the notes of Dr. Pierce showed largely normal examinations. However, Dr. Pierce's records continue to document abdominal pain, right inguinal nerve region pain or pain on examination to the right lower quadrant (R. 768-69, 772, 774, 778, 780-81, 783-84, 786-87, 793, 799, 805, 807-08, 813, 832, 859, 863), vomiting (R. 790, 856) and Plaintiff was limping at times and positive for back pain. (R. 798, 801). For Plaintiff's condition the symptoms noted are consistent with the medical literature. *See* 20 C.F.R. §416.929(c)(requiring symptoms that are reasonably related to the impairment).

The Commissioner next asserts that records were inconsistent, as while Dr. Pierce had a longstanding relationship with Plaintiff, he did not treat him in 2003, so his opinion is "unsubstantiated". Yet, the record contains evidence and medical opinions in 2003. (R. 412, 415, 441, 647-761). This treatment is documented in later records. (*See e.g.*, R. 457). Dr. Pierce's records are only available in this file dating to 2011 but it is clear at this visit, he was aware of the past four surgeries Plaintiff had undergone. (R. 466, 628). It is also significant that Dr. Pierce treated Plaintiff during the relevant period and so while his statements extended further than the relevant period, it is not clear why a doctor who (1) treated during the relevant period (2) was knowledgeable of evidence about a prior period and (3) made statements about the prior period consistent with evidence in the record, results in a finding that the weight to his opinion should be diminished. *See e.g., T.D.B. v. Saul*, 19-CV-1560, 2020 WL 2098057, at *4 (N.D. Ill. May 1, 2020)(All three doctors had treated Plaintiff during the relevant time period, and it is not clear whether the opinions apply to the pre-DLI time period or not); 20 C.F.R. §416.927(c)(2)(ii) (generally the more knowledge the source has about your impairment(s) the more weight we give to a source's medical opinion).

Additionally, with respect to the statement in Dr. Pierce's record that Plaintiff was able to have normal life with pain medications, this statement pre-dates Plaintiff's filing date by four years. (R. 467). Records thereafter continue to document inguinal pain even on pain medication and anxiety, still prior to Plaintiff's filing date. (R. 467-608).

The Commissioner also argues that Dr. Pierce's opinion was contradicted by that of Drs. Ruiz, Brill, Smejkal and Jao. As to Dr. Brill, the Commissioner overlooks that the doctor stated "clmt reports seeing [Dr. Pierce] recently, although they show no records after 2014". (R. 139).

Thus, Dr. Brill had no records to review with regard to the relevant period absent that of Dr. Jao. (R. 139). Dr. Ruiz noted there was a "date last insured" issue and did not have any records, thus he listed insufficient evidence. (R. 124). Dr. Jao did not provide functional limitations but listed severe nerve damage due to multiple surgeries and ongoing chronic pain to the groin area. (R.625)  Dr. Smejkal found Plaintiff was unable to drive due to right leg pain and nerve damage (R. 887), could never stoop, kneel, crouch or crawl (R. 885), never push or pull or operate foot controls (R. 883) and could not perform even sedentary work. (R. 883). As Plaintiff notes, it is unclear how the one other doctor who issued an opinion as to functioning is inconsistent with Dr. Pierce in this case.

Finally, the Commissioner argues that Dr. Pierce never sent Plaintiff to a specialist for treatment. As previously discussed, there is clearly evidence as to an inability to afford care. (R. 27); SSR 16-3p. Also, this is an avenue not explored by the ALJ at the hearing pursuant to SSR 16-3p. In any event,  the ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion. *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). Here, no doctor opined that Dr. Pierce should have referred Plaintiff to a specialist and the record is clear that he had sought out specialist care previously, underwent four surgeries and pain management. (R. 447-64, 641-761). Considering the multiple treatments Plaintiff has already undergone and the failed surgeries as well as his particular impairment, it is unclear what a specialist in the field of pain or neuropathy could to do.

For all of these reasons, remand is warranted on the issue of the proper weight to be given to the opinion evidence.

Next, Plaintiff argues that the ALJ's RFC is not consistent with SSR 96-8p.  The RFC is

an assessment of what work-related activities the claimant can perform despite his limitations.

*Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §416.945(a)(1). In

evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant

evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §416.945(a)(3).

According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities, observations). In
> assessing RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and continuing
> basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and
> describe the maximum amount of each work-related activity the individual can
> perform based on the evidence available in the case record. The adjudicator must
> also explain how any material inconsistencies or ambiguities in the evidence in the
> case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Although an ALJ is not required to discuss

every piece of evidence, she must consider all of the evidence that is relevant to the disability

determination and provide enough analysis in her decision to permit meaningful judicial

review. *Clifford*, 227 F.3d at 874.

At Step Two, the ALJ found severe impairments which included obesity. (R. 22). Yet

after Step Three, the ALJ does not address Plaintiff's obesity. (R. 23). An ALJ must consider the

exacerbating effects of a claimant's obesity on his other conditions when arriving at the RFC

assessment. *Clifford*, 227 F.3d at 873 (remanding where the ALJ "should have considered the

weight issue with the aggregate effect of [claimant's] other impairments"); *see also Martinez*

*v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less

serious than the evidence indicates, the combination of them might be disabling."). In this case,

the ALJ found at Step Two that Plaintiff's obesity was a severe impairment, but there was no

20

analysis or explanation as to whether or how the obesity exacerbated his neuropathy or anxiety. *See Martinez*, 630 F.3d at 698-99 ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40."); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004).

The ALJ further found headaches to be severe at Step Two. (R. 23). Yet other than recognizing Plaintiff's testimony as to worsening headaches (R. 25) and being prescribed medication for migraines (R. 26), the ALJ again makes no mention of headaches despite finding them severe. In his functional report, Plaintiff had put down that he had constant headaches. (R. 322). Thus, Plaintiff argues that the ALJ failed to build an accurate and logical bridge from evidence to result. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007).

Plaintiff further argues that the "gaping hole in the record," *Allensworth*, 814 F.3d at 835, "is the absence of any evidence" to support the ALJ's RFC finding that Plaintiff can "lift and/or carry up to twenty pound occasionally and up to ten pounds frequently," can "sit, stand and/or walk throughout a normal workday," and can "occasionally climb ramps or stairs, stoop, kneel, crouch and crouch." (R. 24). "Although the [ALJ] concluded that [Plaintiff] can perform light work for 40 hours a week, she did not indicate what evidence supported that conclusion—a fatal error*." Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016) *accord Eakin v. Astrue*, 432 Fed.Appx. 607, 611 (7th Cir. 2011)

In response, with respect to Plaintiff's headaches and obesity, the Commissioner cites to the case of *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). However, this case is not relevant to the facts herein.  In *Castile*, the claimant was trying to argue that an impairment should have been considered severe at Step Two. In the present case, the ALJ found obesity and headaches

severe at Step Two, (R. 23), but did not consider them in the RFC. *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)(required to consider impairments in combination); SSR 96-8p.

The Commissioner argues that Dr. Jao was aware of Plaintiff's obesity and Drs. Ruiz and Brill relied on the consultative examination.  Yet, Dr. Jao, as noted above, did not provide functional limitations. (R. 623-24). Moreover, in reviewing the exam, Drs. Ruiz and Brill make no reference to Plaintiff's obesity. (R. 117, 138-39). Further, as discussed above, these doctors did not review any of Dr. Pierce's records during the relevant period. Plaintiff points out that the only doctor other than Dr. Pierce who was aware of Plaintiff's obesity and Plaintiff's combination of impairments was the consultative examination of Dr. Smejkal who found Plaintiff disabled. (R. 878-87); *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014)(rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step); *Loftis v. Berryhill*, 15 C 10453, 2017 WL 2311214, at *7 (N.D. Ill. May 26, 2017).

As to Plaintiff's headaches, as discussed above, the ALJ found this impairment severe yet did not account for it or address it in the RFC. (R. 23). This indicates that the ALJ found Plaintiff's headaches imposed significant limitations on his ability to perform work activities. *See* SSR 96–3p, 1996 WL 374181, at *1 (Jul. 2, 1996) (a severe impairment, by definition, "significantly limits an individual's physical or mental abilities to do basic work activities."). But the ALJ did not properly explain why his finding at Step Two that Plaintiff had severe headaches did not warrant any functional limitations in the RFC. *See Martinez v. Colvin*, No. 14 C 2292, 2015 WL 4065032, at *7 (N.D. Ill. July 2, 2015). ("Having found that plaintiff's headaches are

22

a severe impairment, the ALJ was required to account for them in his RFC."). "Where an ALJ finds that a claimant suffers headaches and those headaches constitute a medically determinable severe impairment, an ALJ must explain how [he] considers the severity and frequency of those headaches and how the fluctuating nature of headaches impacts a claimant's ability to work." *Gregory B. v. Saul*, No. 2:19cv184, 2020 WL 995828, at *8 (N.D. Ind. Mar. 2, 2020) (citing *Look v. Heckler*, 775 F.2d 192, 195–96 (7th Cir. 1985)). As the ALJ failed to consider Plaintiff's headaches and obesity in the RFC, remand is required.

Next, Plaintiff argues that the ALJ's evaluation of his subjective symptoms is insufficient. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain her evaluation with specific reasons that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). An ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility." SSR 16-3p.

Under SSR 16-3p, the ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific

reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9. The ALJ must weigh the

claimant's subjective complaints, the relevant objective medical evidence, and any other evidence

of the following factors:

> (i) The individual's daily activities;
> (ii) Location, duration, frequency, and intensity of pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) Type, dosage, effectiveness, and side effects of any medication;
> (v) Treatment, other than medication, for relief of pain or other symptoms;
> (vi) Other measures taken to relieve pain or other symptoms;
> (vii) Other factors concerning functional limitations due to pain or other
> symptoms.

*See* 20 C.F.R. § 416.929(c)(3).

In the present case, the ALJ stated that physical examinations of the Plaintiff by Dr. Pierce

were normal except for an occasional pain to his right lower quadrant. (R. 26). As noted above,

Dr. Pierce's records contain evidence of abdominal pain, right inguinal nerve region pain or pain

on examination to the right lower quadrant (R. 768-69, 772, 774, 778, 780-81, 783-84, 786-87,

793, 799, 805, 807-08, 813, 832, 859, 863), vomiting (R. 790, 856) and he was limping at times

and positive for back pain. (R. 798, 801); *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) ("an

administrative law judge may not deny benefits on the sole ground that there is no diagnostic

evidence of pain"); *Adaire v. Colvin*, 778 F.3d 685, (7th Cir. 2015) ("[The ALJ's] principal error,

which alone would compel reversal, was the recurrent error made by the Social Security

Administration's ALJs, and noted in many of our cases, of discounting pain testimony that can't

be attributed to 'objective' injuries or illnesses—the kind of injuries and illnesses revealed by x-

rays.").

Also, in both the CEs during the relevant period, Plaintiff was unable to squat. Yet the

ALJ found no limitation in his ability to squat. (R. 27); *Varga v. Colvin*, 794 F.3d 809, 813 (7th

Cir. 2015); *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir.2010)(requiring an accurate and logical bridge). The ALJ further states that Plaintiff was not receiving any mental health treatment. (R. 27). However, it is clear that Plaintiff lacked insurance and was being treated for mental health by his primary care physician. (R. 27). The fact that Plaintiff did not see a mental health professional is not probative of the severity of Plaintiff's symptoms in the absence of any exploration into the reasons why he did not see one, especially because Plaintiff was receiving prescribed anti-depressant medication from his primary care physician. *See O'Connor-Spinner v. Colvin*, 832 F.3d 690, 696 (7th Cir. 2016) (criticizing ALJ's finding that the claimant lacked mental health treatment where "throughout that time she was taking antidepressants that only a medical provider treating her depression would have prescribed"); *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). Plaintiff claims that, here, there is clearly evidence as to an inability to afford care. (R. 27). The ALJ stated that there are free or low income services Plaintiff could attend to obtain care. (R. 29). However, the ALJ does not name any, nor make any inquiry whether Plaintiff had tried other free or low income services, and he is clearly seeking treatment from his primary provider (R. 63).

The ALJ also stated that there is only evidence on one occasion of panic attacks with vomiting. (R. 27). However, as Plaintiff points out, this completely ignores the letter by DDS Mark R. Van Buskirk that Plaintiff suffered from frequent emesis which began to damage his tooth enamel and required aggressive treatment. (R. 640). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, [she] may not ignore entire lines of contrary evidence". *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). As to mental health, the ALJ alleges that Plaintiff is able to drive. (R. 30).

Yet, at every CE it is documented that he was driven to the appointment by his father. (R. 615-20, 622, 629-31, 878-81). At the last CE, it was noted he had severe leg problems and could not drive. (R. 887). Plaintiff explained that once a week he drove a quarter mile. (R. 68). As to concentration, Plaintiff explained that he had problems with his memory. (R. 62). His medication made him very discombobulated. (R. 61); 20 C.F.R. § 416.929(c)(3); SSR 16-3p (ALJ should consider medication side effects). Plaintiff contends that the ALJ simply ignores this line of evidence. (R. 30).

Moreover, in Plaintiff's daily activities form, he explained he had huge agoraphobia (R. 346), handled stress "terribly" (R. 346), would get anxiety attacks and vomit (R. 344) and rarely left the house due to extreme anxiety. (R. 343). This evidence is contrary to the ME. Also, even the DDS review, taking into consideration the functional report, had found Plaintiff's allegations "credible" and found he could only relate to others on a superficial and ongoing basis with coworkers and supervisors. (R. 154). As noted above, the ALJ erred in weighing the DDS evidence suggesting, incorrectly, that Dr. Albert had found greater social restrictions. (R. 30); *Zurawski*, 245 F.3d at 887 (requiring a logical bridge).

Plaintiff argues that the ALJ fails to address many of the regulatory factors of 20 C.F.R. § 416.929 including daily activities and his levels of pain and exacerbating or alleviating activities. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Plaintiff testified that he could not stand, walk or sit more than 10-20 minutes as it made the pain worse. (R. 55). He had to lie down and elevate his legs. (R. 55). His medications did not work very well. (R. 56). Physical therapy had hurt more than it helped. Plaintiff had received about 72 injections and the anesthesiologist said he would not do any more procedures. (R. 56). Plaintiff points out that the ALJ did not take this

evidence into consideration when suggesting that the RFC was consistent with the hearing testimony and Plaintiff's "conservative" treatment. (R. 30).

In response, the Commissioner first points to the assessments of Dr. Jao, Ruiz and Brill. Yet as noted above, Dr. Ruiz and Brill lacked critical parts of the record. Dr. Jao did not provide any assessment as to functioning. (R. 631). However, he did note severe nerve damage and chronic right groin pain. (R. 631). The Commissioner points to a lack of specialist in this case even though the record reflects Plaintiff had previously undergone multiple pain injections which did not help, felt fatigued all the time, was suffering panic attacks due to severe pain and could have no more treatment due to insurance issues. (R.622).

The Commissioner next addresses Plaintiff's daily activities. In Plaintiff's daily activities form he explained he had huge agoraphobia (R. 346), handled stress "terribly" (R. 346), would get anxiety attacks and vomit (R. 344) and rarely left the house due to extreme anxiety. (R. 343). The Commissioner argues that Plaintiff was able to maintain his personal care, prepare meals, do laundry, drive and walk to places and manage his finances. (Dkt #16 at 13).

Plaintiff's form upon which the Commissioner relies states he slept 16-18 hours per day. He had constant headaches (R. 322). He could not lift anything over 10 pounds per the doctor's orders. (R.322). He made quick foods like sandwiches or frozen foods and tried to do his own laundry. (R. 324). Plaintiff did not shop. (R. 325). He spent the day throwing up and watching television. (R. 326). He did not socialize. He could walk less than a block. Plaintiff needed reminders. His medications left him less coherent. (R. 327).

An ALJ may consider a claimant's daily activities when evaluating the claimant's credibility so long as it is done "with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

An ALJ may not place "undue weight" on the daily activity analysis. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). The ALJ should explain any purported inconsistencies between the claimant's daily activities, subjective complaints, and the medical evidence in the record. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Clearly, the ALJ's decision was lacking with respect to her assessment of Plaintiff's subjective symptoms.  Thus, remand is warranted on this issue also.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

 Entered: May 29, 2020.

s/ William C.  Lee
William C. Lee, Judge
United States District Court